NOT DESIGNATED FOR PUBLICATION

No. 120,490

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS JAMES GRUBB,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed April 10, 2020. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM: Thomas James Grubb appeals the district court's denial of his motion to withdraw plea. Grubb pled no contest to two counts of distribution of methamphetamine, but before sentencing Grubb sought to withdraw his plea, claiming it had not been knowing because neither he nor his attorney had seen the State's evidence, and that it had not been voluntary because he had been coerced into entering a plea as it was the only way to see his son over the Christmas holiday. After a review of the record, we are unpersuaded by Grubb's arguments and affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2017, the State charged Grubb with three counts of distribution of methamphetamine. Grubb subsequently entered into a plea agreement with the State in which he agreed to plead no contest to two lower severity level counts of distribution of methamphetamine. In exchange for Grubb's plea, the State dismissed the third count. Both parties agreed to recommend 64 months' imprisonment, but the State would recommend 74 months if Grubb violated any bond conditions.

At his plea hearing, Grubb pled no contest as agreed. Prior to accepting Grubb's plea, the district court went through a plea colloquy with Grubb to ensure his plea was knowingly and understandingly made. Grubb said no one promised him anything or threatened him into entering the plea. Grubb also said he understood everything and had had sufficient time to talk with his attorney. The State then set forth the factual basis for Grubb's plea by detailing the two controlled buys of methamphetamine from Grubb. The district court noted Grubb was cutting his prison time to roughly a quarter of what he could potentially get by pleading no contest. Grubb agreed that the deal factored into his decision. The district court accepted Grubb's plea and found him guilty.

Not long after entering his plea, Grubb was arrested for unlawfully tampering with his electronic monitoring equipment. Grubb hired a new attorney and filed a motion to withdraw his plea. At the hearing on this motion, Grubb explained his only complaint was that his plea had not been knowingly and understandingly made. According to Grubb, after he entered his plea, he asked his plea counsel if he could see the discovery, but counsel told him he had not received any discovery yet. Grubb admitted he received a benefit from the plea agreement and the district court had an extensive colloquy with him about his rights. Grubb contended his effort to withdraw his plea was more than buyer's remorse because the discovery included evidence regarding two women involved in his charges.

In one count, a woman involved bought methamphetamine from Grubb in his truck in a public parking lot. The woman told the potential buyer a short time later at Walmart that she would have to remove the drugs from her vagina. Grubb claimed the woman would not have been able to insert the drugs into her vagina before meeting the potential buyer. In the dismissed third count, another woman allegedly claimed full responsibility for the sale of the methamphetamine. Grubb expressly disavowed any claim that his plea counsel's representation had been deficient and argued the plea was not knowingly and understandingly made because "[a] defendant should have the right to at least review the evidence against him before making this kind of decision."

Grubb did not present any evidence in support of his motion but relied on the State's admission that plea counsel did not have the discovery available at the time Grubb entered his plea. The State called Grubb's plea counsel as a witness. He testified Grubb was very active in his plea negotiations and wanted to be released from jail before Christmas. Counsel told Grubb before his plea that he had not yet reviewed all the discovery and it was pretty early to enter a plea because he had not yet had time to investigate any potential defense. Grubb told him he wanted to accept the plea agreement so he could be home for Christmas to see his son. On cross-examination, plea counsel acknowledged the State had leveraged Grubb's release to pressure him to accept the plea.

During closing, Grubb made the additional argument his plea had not been voluntary because he had been desperate to get out of jail so he could see his son. Grubb argued he believed the only way he was going to be able to see his son was to accept the plea deal.

The district court was unpersuaded by Grubb's arguments and found his claim not factually supported. The district court found Grubb had not been pressured or coerced into taking the plea, noting that it specifically informed Grubb at the plea hearing that it was not required to place him on bond. The district court concluded that the knowing

3

element meant Grubb knew the nature of the charges and his constitutional rights, which the district court had gone over with Grubb before accepting his plea. After denying Grubb's plea withdrawal motion, the district court then proceeded to sentencing and imposed a 74-month prison sentence.

Grubb timely appeals the denial of his motion to withdraw his plea.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING GRUBB'S MOTION TO WITHDRAW HIS PLEA?

Grubb's sole argument on appeal is the district court abused its discretion by denying his plea withdrawal motion. Grubb reprises his arguments before the district court, claiming (1) his plea had not been knowingly and understandingly made because neither he nor his attorney had reviewed the discovery before pleading, and (2) he had been coerced into entering his plea because he was scheduled to have his son on Christmas and it was the only way for him to be out on bond over the holiday.

*Standard of Review*

We review the district court's denial of a plea withdrawal motion and its underlying determination that the defendant failed to show good cause to justify the withdrawal of a plea for an abuse of discretion. An abuse of discretion exists when the district court's action is based upon an error of law or fact or where no reasonable person would take the view adopted by the district court. The party seeking to withdraw the plea bears the burden to establish an abuse of discretion. When evaluating the evidence under the abuse of discretion standard, we do not reweigh evidence or assess witness credibility. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

4

*Analysis*

A defendant may withdraw a guilty or no contest plea before sentencing "for good cause shown and within the discretion of the court." K.S.A. 2019 Supp. 22-3210(d)(1). "Good cause [is] defined by Black's Law Dictionary 266 (10th ed. 2014) as '[a] legally sufficient reason.'" *In re Guardianship & Conservatorship of Burrell*, 52 Kan. App. 2d 410, 414, 367 P.3d 318 (2016). Good cause is a "'lesser standard'" to meet compared to the manifest injustice standard required for a postsentencing motion to withdraw. *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

Whether good cause exists is analyzed using the three *Edgar* factors: "'whether "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)." *Woodring*, 309 Kan. at 381. Not every *Edgar* factor needs to weigh in the defendant's favor in every case, and we may consider other factors as well to determine the existence of good cause. *Woodring*, 309 Kan. at 381. Reliance on the *Edgar* factors should not be exclusive because doing so would "transform the lower good cause standard of the statute's plain language into a constitutional gauntlet." *Aguilar*, 290 Kan. at 513. However, a defendant's "mere 'change of mind'" is insufficient to withdraw a plea without any evidence the defendant can satisfy the *Edgar* factors. *Woodring*, 309 Kan. at 384.

A.    *Knowingly and understandingly*

Grubb first argues he did not knowingly and understandingly enter his no-contest plea because neither he nor his attorney viewed the discovery before accepting the plea agreement.

5

Before a district court can accept a no-contest plea in a felony case, it must address the defendant personally and determine whether the plea was voluntarily made and the defendant understood the nature of the charge and the consequences of the plea. K.S.A. 2019 Supp. 22-3210(a)(3). Additionally, defense counsel has the duty to advise a defendant about the range of potential penalties and discuss the possible choices available to the defendant to ensure a plea is voluntarily and intelligently made. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Here, at the plea hearing, the district court held an extensive colloquy with Grubb about his no-contest plea. During that exchange, the district court discussed the charges and Grubb's constitutional rights; in answer to each question, Grubb informed the district court that he understood. The district court also addressed Grubb's potential sentences. When asked, Grubb responded that he had had enough time to discuss the case with his plea counsel and he was happy with his attorney's services. The State presented the factual basis to support Grubb's plea; Grubb admitted to those facts and agreed they were sufficient to convict him. The district court's on-the-record discussion with Grubb about the nature of the charges, potential penalties, and his constitutional rights was sufficient to render Grubb's no-contest plea knowing. See *State v. DeAnda*, 307 Kan. 500, 507-08, 411 P.3d 330 (2018).

Grubb attempts to persuade us that despite the district court's discussion with him, his plea was not knowing because he did not know all the evidence in his case as neither he nor his attorney had reviewed the discovery. To support his point, Grubb presents two facts in the discovery that would have led him to change his mind. First, a woman—who said she bought methamphetamine from him in his truck—later told a potential buyer that she had to remove the drugs from her vagina, when she would not have been able to insert the drugs while in Grubb's truck in the public parking lot. Second, another woman allegedly took full responsibility for the distribution of methamphetamine that underlaid the third count. Although Grubb asserts in his brief that if he had had the discovery at the

time of his plea, the information would have altered his decision to enter the plea, Grubb does not cite to anywhere in the record where he made that argument before the district court, and our review of the record fails to show such an argument either. Issues not raised below are generally not properly before us. See *State v. Meredith*, 306 Kan. 906, 909, 399 P.3d 859 (2017).

Instead, Grubb spends much of his argument in his brief distinguishing his case from *State v. Szczygiel*, 294 Kan. 642, 279 P.3d 700 (2012), discussed by the district court in its ruling. In doing so, however, he focuses on Szczygiel's incompetent counsel claim instead of Szczygiel's claim that his plea was not knowingly made. While Szczygiel's plea withdrawal motion was postsentencing, and thus subject to the manifest injustice standard, the discussion about undisclosed evidence is beneficial here. Szczygiel claimed his plea was not knowingly or understandingly made because the government did not disclose material impeachment evidence prior to his plea, which denied him "'the ability to make an accurate calculus of the evidence and facts of the case to determine whether the best option . . . was to go to trial or to enter into the plea agreement.'" 294 Kan. at 645. The Kansas Supreme Court held Szczygiel's claims did not support his plea being unknowing because the government is not constitutionally or statutorily required "to disclose material impeachment evidence prior to entering a plea agreement." 294 Kan. at 645.

Grubb's desire to quickly reach an agreement undercuts his claim that his plea was unknowing because neither he nor his attorney had viewed the discovery prior to entering the plea. Grubb told his lawyer he wanted the plea done quickly. His plea counsel informed him it was pretty early in the process to agree to a plea, but Grubb insisted. Grubb knew his attorney had not reviewed any discovery and had not yet had the time to investigate potential defenses.

Grubb was aware of the charges against him, and he was in the best position to know the veracity of those charges because he was present when the crimes occurred. The district court found that a knowing plea meant for a defendant to be informed of the charges and his or her constitutional rights. The district court found it had provided Grubb with that information. Moreover, the district court also found Grubb had the probable cause affidavit containing many of the State's facts and knew whether he committed the crimes. A reasonable person could agree with the district court's finding that Grubb's plea was knowingly and understandingly made.

B.    *Coercion*

Grubb next argues he was coerced into accepting the plea agreement because he was scheduled to have his son for Christmas and he wanted to be released on bond for the holiday. At the plea hearing, the district court discussed with Grubb his plea and his waiver of rights. During that colloquy, this exchange occurred:

> "THE COURT: Have you been threatened with anything other than possible conviction of the original charges in this case to get you to enter your plea?
>
> "THE DEFENDANT: No, sir.
>
> "THE COURT: Have you been promised anything other than what is contained in the plea agreement to get you to enter your plea?
>
> "THE DEFENDANT: No, sir."

A short time later, the district court circled back to ensure Grubb's plea was voluntary after discussing the lesser sentence Grubb would receive from the plea agreement:

8

"THE COURT: You were not under any other undue stress to cause you to enter the plea or any other promises or representations, correct?

"THE DEFENDANT: No."

At the plea withdrawal hearing—after reviewing the transcript and listening to plea counsel's testimony—the district court found there was no factual support in the record for Grubb's claim.

When a defendant explicitly tells a district court that pleading guilty or no contest was a voluntary act, "the presence of pressure [by others] does not inherently constitute undue coercion." *Woodring*, 309 Kan. at 383-84. At his plea hearing, the district court twice asked Grubb if anyone pressured, threatened, or promised anything to him to coerce his no-contest plea. Grubb said no. Not until his plea withdrawal hearing did Grubb allege he had been coerced into accepting the plea agreement because it was the only way for him to be out on bond over Christmas to see his son.

Recently, another panel of this court addressed a situation where the defendant moved to withdraw his guilty plea, claiming "his parents coerced him to take the plea by threatening to stop visiting him, to keep his children from him, and to withdraw their financial support if he rejected the plea and was later convicted." *State v. Burch*, No. 119,748, 2019 WL 3756085, at *1 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* September 9, 2019. The panel surveyed Kansas law, noting: "While no Kansas appellate case has found good cause to withdraw a plea based on familial pressure, there are also no cases which have specifically stated that familial pressure could never rise to the level of coercion that would satisfy the good cause standard under K.S.A. 2018 Supp. 22-3210(d)(1)." 2019 WL 3756085, at *3. The panel explained that *State v. Denmark-Wagner*, 292 Kan. 870, 258 P.3d 960 (2011), and *Williams v. State*, 197 Kan. 708, 421 P.2d 194 (1966), supported this proposition for two reasons: "First, it is clear that general

9

familial pressure does not constitute coercion. Second, caselaw supports that the threat of losing the privilege of visiting one's children does not constitute coercion." *Burch*, 2019 WL 3756085, at *3; see also State v. *Jones*, 47 Kan. App. 2d 109, 111-13, 271 P.3d 1277 (2012). (holding threat by State to terminate defendant's parental rights if plea offer not accepted not coercion).

In *Denmark-Wagner*, the defendant alleged he was coerced into pleading guilty because his mother and sister wanted to see him sooner and hug him during visitation, but he also acknowledged that entering the plea "was ultimately his own choice." 292 Kan. at 877. The Kansas Supreme Court held: "Denmark-Wagner appears to have given heavy weight to the advice of others, but he made his own decision. . . . Whatever family pressure existed did not rise to the level of good cause." 292 Kan. at 877.

In *Williams*, 197 Kan. at 710, the defendant sought to withdraw his plea, claiming his attorney and wife pressured him into entering a guilty plea "by pointing out the damage to the reputation of his stepdaughter and the worry and strife a trial would cause his wife." Williams also feared retribution against his brother, who was on parole at the time. There, the Supreme Court noted:

> "What he now contends indicates nothing more than a change of mind. Every man charged with crime is influenced by personal considerations which may later not appear valid to him, but psychological self-coercion is not the coercion necessary in law to destroy an otherwise voluntary plea of guilty. The mental reasoning upon which appellant based a determination to enter a plea of guilty indicates that his plea was fairly and intelligently entered with knowledge of the consequences and after weighing the alternatives before him." 197 Kan. at 711.

Here, Grubb's desire to see his son over Christmas is not sufficient to show good cause to withdraw his plea. Our appellate courts have consistently held this type of family pressure is not coercion. Additionally, the district court twice asked Grubb if he was

being threatened or promised anything in exchange for his guilty plea, and Grubb said no. A reasonable person could adopt the view of the district court that Grubb did not prove he was coerced. The district court did not abuse its discretion in denying Grubb's motion to withdraw his plea.

Affirmed.